1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FAITH FREEMAN, et al.,

                  Plaintiffs,

    v.

STATE OF WASHINGTON,
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES, et al.,

                  Defendants.

No. C09-5616 RJB

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment (Dkt. 22) and Defendants' Motion for Summary Judgment (Dkt. 13). The court has considered the motions, responses to the motions, and the remainder of the file herein.

This case involves a challenge to the operation of Washington's Medicaid program. Whether either party should be granted judgment as a matter of law will require an examination of the factual background of the Medicaid program in Washington, the procedural history of the parties' dispute, and the legal arguments surrounding the parties' motions.

## I.     <u>FACTUAL BACKGROUND</u>

A. <u>The Medicaid Program.</u>

State and federal governments have long recognized the value of providing community-based medical care and related services to individuals with limited incomes and to individuals with disabilities. These services are provided through the Medicaid program, a cooperative

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 1

federal-state program established by Title XIX of the Social Security Act of 1965, codified at 42 U.S.C. §§ 1396a-1396w (Medicaid Act).  Medicaid is administered at the federal level through the Centers for Medicare and Medicaid Services (CMS), a division of the U.S. Department of Health and Human Services, and it is administered in the State of Washington through the Department of Social and Health Services (DSHS). *See* 42 U.S.C. § 1396a(a)(5) (requiring states to designate a "single state agency" to administer the Medicaid program); RCW 74.04.050 (designating DSHS as the single state agency to administer public assistance, including federal medical assistance).

Under the Medicaid program, the federal government provides financial assistance to states so that they can furnish medical care and other services to qualified individuals.  *See generally* 42 U.S.C. §§ 1396a-1396v; 42 C.F.R. § 430.0; *Cordall v. State*, 96 Wash. App. 415,423,980 P.2d 253 (1999), review denied, 139 Wash. 2d 1017 (2000).  The State's participation in the Medicaid program is voluntary, but if a state chooses to participate, it must design a state plan that complies with applicable federal laws.  *Alexander v. Choate*, 469 U.S. 287, 289 n.1 (1985); *Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1249 (9th Cir. 2000). Federal regulations describe the state plan as

> a comprehensive written statement submitted by the agency describing the nature and scope of its Medicaid program and giving assurance that it will be administered in conformity with the specific requirements of title XIX, the regulations in this Chapter IV, and other applicable official issuances of the Department. The State plan contains all information necessary for CMS to determine whether the plan can be approved to serve as a basis for Federal financial participation (FFP) in the State program.

42 C.F.R. § 430.10.

The Medicaid program was designed to allow local control over services to low-income and disabled individuals.  *See Rodriguez v. City of New York*, 197 F.3d 611, 616 (2d Cir. 1999) (the Medicaid Act confers "broad discretion" on the states); *Danvers Pathology Assocs., Inc. v.*

*Atkins*, 757 F.2d 427, 428 (1st Cir. 1985) (states "enjoy considerable flexibility" in administering the Medicaid program).  The states – subject to the approval of the federal government – determine who is eligible for the program, the services that will be offered, the payment levels to service providers, and administrative procedures.  42 C.F.R. § 430.0 ("Within broad Federal rules, each State decides eligible groups, types and range of services, payment levels for services, and administrative and operating procedures."); *Rite Aid of Pennsylvania, Inc. v. Houstoun*, 171 F.3d 842, 845 (3d Cir. 1999).

   B.  Personal Care Services.

   There are twenty-eight categories of "medical assistance" that may be covered by Medicaid, including such traditional medical services as inpatient and outpatient hospital care, laboratory and X-ray services, and dental care.  *See* 42 U.S.C. § 1396d(a).  Some of these categories are mandatory for participating states, and some are not.  *See* 42 U.S.C. §1396a(a)(10)(A).  Personal care services are an optional service that a state may choose not to offer to adults.  *See id.* (excluding 42 U.S.C. § 1396d(a)(24) as one of the mandatory medical assistance categories).

   Personal care services are defined in federal statute as services that are

   furnished to an individual who is not an inpatient or resident of a hospital, nursing facility, intermediate care facility for the mentally retarded, or institution for mental disease that are (A) authorized for the individual by a physician in accordance with a plan of treatment or (at the option of the State) otherwise authorized for the individual in accordance with a service plan approved by the State, (B) provided by an individual who is qualified to provide such services and who is not a member of the individual's family, and (C) furnished in a home or other location;

42 U.S.C. § 1396d(a)(24).  The associated regulation, 42 C.F.R. § 440.167, is virtually identical, the only difference being that the regulation clarifies that the provider cannot be a "legally responsible relative."

DSHS rules define "personal care services" as "physical or verbal assistance with activities of daily living (ADLs) and instrumental activities of daily living (IADLs) due to [a client's] functional limitations." WAC 388-106-0010. ADLs consist of twelve basic tasks, such as bathing, dressing, eating, and toilet use, and IADLs consist of seven other "activities performed around the house or in the community," such as food preparation, housekeeping, essential shopping, and telephone use. WAC 388-106-0010. This definition is consistent with guidance from CMS, which describes personal care services in its State Medicaid Manual as follows:

> Personal care services (also known in States by other names such as personal attendant services, personal assistance services, or attendant care services, etc.) covered under a State's program may include a range of human assistance provided to persons with disabilities and chronic conditions of all ages which enables them to accomplish tasks that they would normally do for themselves if they did not have a disability. Assistance may be in the form of hands-on assistance (actually performing a personal care task for a person) or cuing so that the person performs the task by him/herself. Such assistance most often relates to performance of ADLs and IADLs. ADLs include eating, bathing, dressing, toileting, transferring, and maintaining continence. IADLs capture more complex life activities and include personal hygiene, light housework, laundry, meal preparation, transportation, grocery shopping, using the telephone, medication management, and money management. Personal care services can be provided on a continuing basis or on episodic occasions. Skilled services that may be performed only by a health professional are not considered personal care services.

State Medicaid Manual, Pt. 4, § 4480, Wash. D.C., 1999b.

C.  The Comprehensive Assessment and Reporting Evaluation (CARE) Tool.

DSHS determines the number of paid personal care hours it is able to authorize for each client by means of an assessment instrument known as the Comprehensive Assessment and Reporting Evaluation (CARE) tool. WAC 388-106-0070. The CARE tool assigns clients to one of seventeen classification groups based on a formula that allocates available resources for personal care services based on client's cognitive performance, clinical complexity, moods and behaviors, activities of daily living, and need for exceptional care. WAC 388-106-0125. Each

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 4

classification group has a specific number of personal care hours ("base hours") assigned to it by the department. WAC 388-106-0080.

Thus, for example, a client with severe disabilities may be assigned to the classification group E High, with 416 base hours per month, and a client with fewer or less severe disabilities may be assigned to the classification group A Low, with 26 base hours per month.  WAC 388-106-0125.  The number of paid personal care hours actually awarded to clients may be less than the base hours for his or her classification group, depending on the level of informal support already available to the client.  WAC 388-106-0130.

D.   2009 Washington State Legislation Regarding Personal Care Services.

In the 2010-11 biennial appropriations act, passed during the 2009 legislative session, the Washington State Legislature determined that hours of personal care for all recipients of in-home personal care services should be reduced.  2009 Wash. Sess. Laws, ch. 564, §§ 205(1)(b), 206(5). The legislature specifically directed that:

> Amounts appropriated [for programs administered by DSHS's Aging and Disability Services Administration] reflect a reduction to funds appropriated for in-home care. The department shall reduce the number of in-home hours authorized.  The reduction shall be scaled based on the acuity level of care recipients.  The largest hour reductions shall be to lower acuity patients and the smallest hour reductions shall be to higher acuity patients. In doing so, the department shall comply with all maintenance of effort requirements contained in the American reinvestment and recovery act.

In response to this directive, DSHS amended WAC 388-106-0125, reducing the base hours for each classification group.  *See* Emergency Rule 388-106-0125, 14 Wash. Reg. 8-9 (Wash. St. Reg. 09-14-046) (July 15, 2009).

E.   Plaintiff Personal Care Services Recipients and Providers.

The five Plaintiff recipients in this case are or were all individuals with moderate to severe disabilities whose medical and personal care services are or were authorized through DSHS. Dkt. 7, at 2-5; Dkt. 8, at 2-4.  Before the reduction of personal care hours at issue here,

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 5

Dylan Kuehl was assigned 155 hours of personal care services.  Dkt. 7, at 5; Dkt. 8, at 4.  In June 2009, DSHS informed Mr. Kuehl that his assigned hours would be reduced to 147.  *Id.*  Similarly, Faith Freeman saw a reduction from 240 to 234 assigned personal care hours (Dkt. 7, at 2; Dkt. 8, at 2), while Luke Benson's personal care hours were reduced from 209 to 204.  (Dkt. 7, at 3; Dkt. 8, at 2).  DSHS informed Daniel Koshelnik in June 2009 that his personal care hours would be reduced from 233 to 227.  Dkt. 7, at 4; Dkt. 8, at 3.  Finally, Johnny Collis was assigned 650 personal care hours before the reductions and 646 after the reductions.  Dkt. 7, at 2-3; Dkt. 8, at 2.

The remaining Plaintiffs in this case all have contracts with DSHS to act as "individual providers," the term used by DSHS to describe providers of in-home personal care services.  *See* WAC 388-106-0010 ("'Individual provider'" means a person employed by you to provide personal care services in your own horne.").  DSHS recipient clients are considered to be the employers of their individual personal care providers, since clients are responsible for hiring, retaining, and directing the work of the providers.  Dkt. 13-3, at 4.  DSHS coordinates and pays for the services through contracts with the individual providers.  *Id.*

## II.   **PROCEDURAL HISTORY**

A.   Plaintiffs' Complaint.

On September 10, 2009, Plaintiffs commenced *Freeman, et al. v. State of Washington, Department of Social and Health Services, et al.*, cause number 09-2-002186-1, in the Superior Court of the State of Washington in and for the County of Thurston.  Dkt. 1.  On October 1, 2009, Defendants removed the case to federal court.  Dkt. 1.

On October 28, 2009, Plaintiffs filed a First Amended Complaint for Declaratory and Injunctive Relief Restoring Medicaid Hours (Dkt. 7).  The first amended complaint named as

Defendants the State of Washington, the Department of Social and Health Services (DSHS), and Susan N. Dreyfus, Secretary of Social and Health Services.  Dkt. 7, at 1.  Defendants filed an answer on October 29, 2009.  Dkt. 8.

The amended complaint alleges the following federal claims on behalf of Plaintiff Medicaid recipients and their care providers: (1) invalidation and unenforceability of the state Medicaid plan pursuant to a failure of Defendants to gain approval of the amended plan from CMS pursuant to 42 U.S.C. § 1392 and 42 C.F.R. §§ 430.10 – 430.14 (CMS Approval Claim); (2) violations of the Medicaid service sufficiency requirement under 42 C.F.R. § 440.230(b) (Medicaid Sufficiency Claim); (3) claims under the Contracts Clause in Article I, Section 10, the Supremacy Clause in Article VI, and the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution (Constitutional Claims).  Dkt. 7.

Plaintiffs also allege the following state law claims in their amended complaint: (1) invalidation and unenforceability of the state Medicaid plan pursuant to a failure of Defendants to gain approval of the amended plan from CMS pursuant to the repeal of R.C.W. 74.09.740 and WAC 388-845-0041, (2) violation of a consent decree entered in *Mead v. Burdham*, and (2) constitutional claims under Article I Section 3 and Article I Section 23 of the Washington Constitution.  Dkt. 7.  In this order, the Court will address Plaintiffs' federal causes of action.

B.  <u>Defendants' Motion for Summary Judgment (Dkt. 13).</u>

On July 20, 2010, Defendants filed a motion for summary judgment.  Dkt. 13. Defendants contend first that because neither the method of determining personal care hours nor the number of hours awarded by the state is required to be included in the state Medicaid plan, the state's 2009 changes to its Medicaid plan did not constitute an "amendment" to the Medicaid plan that must be reported to CMS as per 42 C.F.R. § 430.12(c).  Dkt. 13, at 19-23.  Second,

Defendants contend that the state's 2009 reduction in personal care service hours does not violate the Medicaid sufficiency requirement codified at 42 C.F.R. § 440.230(b) because Plaintiffs cannot demonstrate the reductions at issue here preclude personal care service delivery from reasonably achieving its purpose.  Dkt. 23-25.

Third, Defendants assert that the 1978 consent decree in *Mead v. Burdham* should have no effect on the present proceedings because (1) DSHS has not denied "medical services" as included in the consent decree and (2) significant changes in the law or factual conditions prevent the decree from controlling indefinitely.  Dkt. 13, at 25-29.  Finally, Defendants argue that Plaintiff's constitutional claims fail because (1) the state's action did not deprive Plaintiff providers of any property to which they had a right, (2) the state's action did not deprive Plaintiff providers of their right to liberty, and (3) the state's action did not impair Plaintiff providers' contracts. Dkt. 13, at 29-37.

C.  Plaintiffs' Motion for Summary Judgment (Dkt. 22).

On August 11, 2010, Plaintiffs requested extensions of time to file a Motion for Summary Judgment and a reply to Defendant's Motion for Summary Judgment.  Dkt. 16, 17.  On August 16, 2010, upon request of the Court, the parties jointly sought approval of a stipulated case briefing schedule.  Dkt. 19.  On August 23, 2010, the Court granted the parties' joint motion for a modification of the case briefing schedule, providing Plaintiffs until August 24, 2010 to file a single brief that would consolidate Plaintiffs' Motion for Summary Judgment and Plaintiffs' reply to Defendants' July 20, 2010 Motion for Summary Judgment.  Dkt. 20.  Plaintiffs filed a Motion and Memorandum in Support of Summary Judgment and Reply Brief on August 25, 2010 (Dkt. 22) and exhibits supporting this Motion on August 26, 2010 (Dkt. 23).

In their motion, Plaintiffs begin by stating that Plaintiffs "do not believe that the material facts in this case are in serious dispute." Dkt. 22, at 2. With this at the forefront, Plaintiffs' argument for summary judgment is that (1) Defendants could not reduce the number of personal care service hours in the manner in which the hours were reduced, and (2) the fact that the Washington legislature mandated DSHS to do so is not justification for Defendants' conduct. Dkt. 22, at 8. Instead of identifying the essential elements of the claims contained in their amended complaint, Plaintiffs argue that three agreements should be controlling in this case: (1) an agreement between DSHS and CMS, (2) an agreement between DSHS and the personal care services client, and (3) an agreement between DSHS and the personal care services provider. *Id.*

Additionally, Plaintiffs argue that that the CARE assessment tool "is a needs assessment whether the need is classified as absolute or comparative." Dkt. 22, at 18. Plaintiffs reinforce their characterization of the CARE assessment tool by arguing that the doctrines of judicial estoppel and "executive estoppel" prevent Defendants from "asserting that the CARE assessment process is other than a needs assessment." Dkt. 22 at 19-21. Finally, Plaintiffs argue that the inclusion of personal care services in the legislative definition of "medical assistance" invalidates Defendants alleged unilateral cuts in personal care hours. Dkt. 22, at 21-22. On August 31, 2010, Defendants filed a Response to Plaintiffs' Motion for Summary Judgment. Dkt. 24. On September 2, 2010, Plaintiffs filed a Reply Brief to Defendant's Response to Plaintiffs' Motion for Summary Judgment. Dkt. 27.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## IV.   DISCUSSION

The primary material facts necessary for Plaintiffs' claims are not disputed.  The parties agree that the number of personal care service hours afforded to Plaintiff recipients after June 2009 was less than the number of personal care service hours afforded before June 2009.  Dkt. 7, at 2-6; Dkt. 8, at 2-4.  The parties also agree that these reductions were mandated by the Washington State Legislature during the 2009 legislative session and effected by Defendant DSHS pursuant to WAC 388-106-0125.  Dkt. 7, at 7; Dkt. 13, at 10-11.  The Court will consider whether there exist any remaining genuine issues of material fact and whether the Court can rule on Plaintiffs' claims as a matter of law.

A.  CMS Approval Claim.

*Plaintiffs' Complaint*.  In their First Amended Complaint, Plaintiffs seek to enjoin Defendants from reducing the number of personal care service hours by claiming that the reductions in question are an unapproved amendment to the state's Medicaid plan and waiver programs, and are therefore invalid.  Dkt. 7, at 14-15.

*Defendants' Motion for Summary Judgment.*  Defendants request that the Court dismiss this claim, arguing that (1) no approval of the state plan was required because neither the method of determining personal care hours nor the number of hours afforded is required to be included in the state Medicaid plan, (2) the repeal of RCW 74.09.740 could not invalidate a "federal obligation," and (3) WAC 388-845-0041 has no effect on the reductions at issue.  Dkt. 13, at 23.

*Plaintiff's Motion for Summary Judgment and Reply.*  In their motion for summary judgment and reply to Defendant's response to their summary judgment motion, Plaintiffs appear to rely on two separate legal theories that would require Defendants to gain approval from CMS: one sounding in federal Medicaid regulations and one based on state contract law.  First, Plaintiffs argue that the Medicaid regulations found at 42 C.F.R. §§ 430.10 – 430.14 require the

approval of CMS prior to the adoption of the type of reductions in personal care service hours implemented by Defendants.  Without approval from CMS, according to Plaintiffs, Defendants' reductions in personal care service hours are without regulatory authority, and are therefore invalid.

Second, Plaintiffs argue that because the method of determining personal care service hours (1) assesses the needs of those receiving personal care services, and (2) is an implied term of the agreement between DSHS and CMS, any change in the number of hours afforded resulting from a modification to the method of determining the hours would constitute a change in the contractual relationship between the parties to the agreement, thereby necessitating approval from both parties prior to adoption.  Dkt. 22, at 5-6; Dkt. 27, at 2-3.

Plaintiffs support this state-law contract theory by arguing that Washington's Home and Community-Based Services (HCBS) waiver applications "supplied by CMS and filled out according to its terms by DSHS" include a provision with which a state "may request the ability to change service provided based on budgetary restrictions."  Dkt. 22, at 9.  Because Defendant DSHS did not "specifically request the ability to alter the waiver program services based on budget cuts" by selecting this option in their application, Plaintiffs argue that any reduction in hours pursuant to budgetary constraints is invalid.  Dkt. 22, at 9-10.

*Analysis.*  As a preliminary matter, Plaintiffs' reference in their amended complaint to 42 U.S.C. § 1392 as a basis for CMS approval of an amended state Medicaid plan is misguided.   42 U.S.C. § 1392 relates to grants for planning comprehensive action to "combat mental retardation."  42 U.S.C. § 1392.  It does not relate to state Medicaid plans or the requirement to have amendments to such plans approved by CMS.

Plaintiffs' federal regulatory theory of CMS approval requires a close examination of the relevant federal regulations.  42 C.F.R. § 430.10 provides that "[t]he State plan is a comprehensive written statement submitted by the agency describing the nature and scope of its Medicaid program and giving assurance that it will be administered in conformity with the specific requirements" of federal law.  Additionally, 42 C.F.R. § 430.12(c) requires that "[t]he plan must provide that it will be amended whenever necessary to reflect…[m]aterial changes in State law, organization, or policy, or in the State's operation of the Medicaid program."  42 C.F.R. § 430.14 provides that CMS regional staff will review state plans and amendments.

The text of these regulations makes clear that there must be some material "change" in the operation of the state Medicaid plan before the amendment provision in 42 C.F.R. § 430.12(c) applies.  *See Concourse Rehabilitation & Nursing Center, Inc. v. DeBuono*, 179 F.3d 38, 45 (2nd Cir. 1999).  An amendment to a state plan only occurs if the terms of a proposed state Medicaid plan differ from the terms of the current state Medicaid plan.

Federal regulations do not require that every aspect of a state's Medicaid program be included in its state Medicaid plan.  *See* 42 C.F.R. § 430.10 (stating that a state Medicaid plan describes the "nature and scope" of the program).  When the state takes actions that are not encompassed or referenced in the state Medicaid plan, no amendment or approval for an amendment is required because there is no reason, and no need, to amend a non-existent provision.

This interpretation of the conditions necessary to trigger an amendment under 42 C.F.R. § 430.12(c) is consistent with "Congress' intent to 'confer[ ] broad discretion on the States to adopt standards for determining the extent of medical assistance'" via the Medicaid statute.  *State of Wash., Dept. of Social and Health Services v. Bowen*, 815 F.2d 549, 555 (9th Cir. 1987), quoting

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 13

1    *Beal v. Doe*, 432 U.S. 438, 444 (1977).  In other words, the changes in payment schedules

2    adopted by the state in this case are not inconsistent with the existing state Medicaid plan.

3    Therefore, no amendment to the plan is necessary, and no federal approval is required pursuant

4    to federal regulations.

5            Contrary to the claims and arguments by Plaintiffs, the evidence presented by the parties

6    indicates that the method of determining the number of hours afforded to recipients of personal

7    care service hours was not and is not included in Washington's state Medicaid plan.  Without the

8    inclusion of the methods for determining the number of hours afforded, any change to that

9    methodology as necessitated by DSHS Emergency Rule 388-106-0125 would not and could not

10   trigger the regulatory requirement of approval from CMS for that amendment.

11

12           For example, in the section of the state Medicaid plan entitled "Amount, Duration, and

13   Scope of Medical and Remedial Care and Services Provided to the Categorically Needy" which

14   allows for the election of services a state will provide as defined in 42 U.S.C. § 1396d(a)(24),

15   Washington agrees to provide personal care services.  Dkt. 13-1, at 4.  In this election, the state

16   notes that (1) a state-approved (non-physician) service plan is allowed, (2) personal care services

17   outside the home are allowed, and (3) limitations on personal care services are provided in

18   Attachment 3.1-A, Page 65 of the state Medicaid plan.  *Id.*  Nothing in this section indicates how

19   the number of personal care service hours will be determined.  Also, the limitations on personal

20   care services provided at Attachment 3.1-A, Page 65 of the state Medicaid plan do not specify

21   the method of determining the number of hours afforded to recipients of personal care services.

22   Dkt. 13-3, at 67.

23

24           Furthermore, it appears that the most logical place in Washington's Medicaid plan that

25   would include the method of determining the number of personal care service hours is in

26

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 14

Attachment 4.19-B, Pages 31-32 of the state Medicaid plan entitled "Policy and methods used in

establishing payment rates for each of the other types of care listed in section 1905(A) of the Act

that is included under the plan." Dkt. 13-3, at 69-70.

Those pages set forth the effective dates of the fee schedule and a description of the

standard hourly rate. Dkt. 13-3, at 69. Specifically, the narrative on page 32 of Attachment

4.19-B states that "[t]he multi-hour rate for personal care services provided in a residential-based

setting varies, *based on the classification group in which the beneficiary is assigned*. Each

beneficiary is assigned to a classification group *based on the Department's assessment* of their

personal care needs." Dkt. 13-3, at 70 (emphasis added).

To the extent that this language indicates how the number of personal care hours will be

afforded to recipients, the section makes clear that the Department (DSHS) will be responsible

for assigning recipients to classification groups based on DSHS's assessment of the recipient.

This evidence appears to provide substantial discretion to DSHS regarding how personal care

service hours will be afforded. This broad discretion granted to DSHS in the state Medicaid plan

to determine the amount of personal care hours afforded is reinforced by language from that

same section stating that "[n]o payment is made for services beyond the scope of the program or

hours of service *exceeding the department's authorization*." Dkt. 13-3, at 69 (emphasis added).

The Washington state Medicaid plan does not contain a provision setting forth the way in

which the number of personal care service hours is determined. Where the number of personal

care hours is referenced, the language of the state plan grants broad discretion to the state in

determining how the number of hours is to be determined. Because the state Medicaid plan does

not indicate the number of hours or the methodology to be used in determining the number of

hours to be provided to recipients, any modification to that methodology need not be reflected in

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 15

an amendment to the state plan.  With no amendment necessary, no approval for an amendment to the state Medicaid plan was necessary pursuant to 42 C.F.R. § 430.12(c).

In addition to the language of the state Medicaid plan, Plaintiffs point to the state's Home and Community-Based Services waiver applications as evidence that approval from CMS was required before reducing the number of personal care service hours afforded.  Dkt. 22, at 9-10.  However, any reliance on Washington's HCBS waiver applications as a trigger for the application of 42 C.F.R. § 430.12(c) is misguided.  While the waiver applications may be relevant to Plaintiffs' state contract law theory regarding CMS approval, the applications do contain language that is in accordance with the state Medicaid plan granting broad discretion to the state in determining the number of personal care service hours.  For example, the "Basic Waiver" relied on by Plaintiffs states that "[t]he maximum hours of personal care received are determined by the approved department assessment for Medicaid personal care services."  Dkt. 13, at 4.  Any other reference to determining the number of personal care service hours in the "Basic Waiver" must be read in context with this broad discretion granted to DSHS.  There is nothing in the HCBS waiver applications that creates an additional approval requirement pursuant to 42 C.F.R. § 430.12(c).

Finally, it must be noted that an amended Washington state Medicaid plan, reflecting the 2009 reductions in personal care service hours, was submitted and approved by CMS in March 2010.  Dkt. 13-3, at 72.  This evidence suggests that CMS not only approved the state plan absent any detailed mention of the method of determining the number of personal care service hours but also had discussions with DSHS while working towards approval.  *Id.* ("CMS appreciates the significant amount of work that your staff dedicated to getting this [amendment] approved and the cooperative way in which we achieved this much desired outcome.")  If CMS had issues

about how or why the number of hours was reduced, representatives from CMS would have appropriately raised these issues with DSHS during the March 2010 approval process.

Plaintiffs have not shown that Defendants were required to seek approval for an amendment to Washington's state Medicaid plan pursuant to 42 C.F.R. § 430.12(c) before the 2009 reductions in personal care service hours.  There are no genuine issues of material fact regarding this claim.  The evidence presented shows that the state Medicaid plan – both before and after the 2009 reductions – did not include the method of determining the number of personal care service hours.  Any mention of the number of personal care service hours in either the state Medicaid plan or HCBS applications must be viewed in context with the broad discretion that the state is afforded in determining the number of personal care service hours provided in those same documents.  No amendment approval pursuant to 42 C.F.R. § 430.12(c) from CMS was necessary.  Any claim based on 42 C.F.R. § 430.12(c) should be dismissed.

    B.  <u>Medicaid Sufficiency Claim.</u>

*Parties' motions for summary judgment.*  Plaintiffs claim that the number of personal care service hours afforded after the June 2009 reductions falls below the level of service that is sufficient in amount, duration, and scope to reasonably achieve its purpose as required pursuant to 42 C.F.R. § 440.230(b).  Dkt. 7, at 14-15.  Defendants request that the Court dismiss this claim.  Dkt. 13, at 23-25.

*Analysis.*  42 C.F.R. § 440.230 provides as follows:

> **§ 440.230 Sufficiency of amount, duration, and scope.**
> (a) The plan must specify the amount, duration, and scope of each service that it provides for--
>         (1) The categorically needy; and
>         (2) Each covered group of medically needy.
>
> (b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.

(c) The Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service under §§ 440.210 and 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.

(d) The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures.

In order to succeed in their claim, Plaintiffs must show that the 2009 reductions prevented personal care service delivery from reasonably achieving "its purpose." "Its purpose" means the purpose of "each service" as set forth in § 440.230(a).  42 C.F.R. § 440.230(b); *See King by King v. Sullivan*, 776 F.Supp. 645, 652 (D. R.I. 1991).  42 C.F.R. § 440.230 does not detail a level of services that is sufficient in "amount, duration, and scope" to meet the purposes of the Medicaid program as a whole.  Prescribing a particular level of services would run counter to the flexible and cooperative nature of state participation in Medicaid.  Instead, 42 C.F.R. § 440.230(b) requires that any medical assistance service provided be adequate to reasonably achieve the purposes of the medical assistance service that the state offers in its state plan. *See King by King*, 776 F.Supp. at 652.

Whether the 2009 reduced personal care services hours reasonably achieved the purposes of personal care services must also be examined in the context of the "substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided 'in the best interests of the recipients.'" *Alexander*, 469 U.S. at 303. As the Supreme Court explained in *Alexander*:

[M]edicaid programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs.  Instead, the benefit provided through Medicaid is a particular package of health care services.... That package of services has the general aim of assuring that individuals will receive necessary medical care, but the benefit provided remains the individual services offered-not "adequate health care."

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 18

*Id.*  Furthermore, 42 C.F.R. § 440.230(d) codifies the discretion afforded to states in shaping the amount of Medicaid services offered by providing that "[t]he agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures."

Therefore, the present Medicaid sufficiency question becomes: Do the 2009 reductions in personal care services hours reasonably meet the standards of personal care services set forth in Washington's state Medicaid plan?

To answer this question, the purposes of personal care services must be examined. Personal care services are defined as "physical or verbal assistance with activities of daily living (ADL) and instrumental activities of daily living (IADL)."  WAC 388-106-0010.  At issue is whether the reductions in personal care service hours were no longer sufficient in amount, duration, and scope to reasonably achieve their purpose.

Here, in their Motion for Summary Judgment, Defendants produced numerous depositions of provider Plaintiffs who stated that recipient Plaintiffs experienced no change in services as a result of the reductions.  *See* Dkt. 13-2, at 10, 18; Dkt. 13-1, at 96.  Plaintiffs have provided no evidence to rebut the contention that the reductions reasonably prevented Plaintiff recipients from receiving assistance with ADLs or IADLs.  As a result, Plaintiffs have not met their burden to show that the 2009 reductions in personal care service hours failed to meet the standards of personal care services as set forth in Washington's state Medicaid plan.  Therefore, because there are no genuine issues of material fact regarding the sufficiency of the reductions pursuant to 42 C.F.R. § 440.230(b), this claim should be dismissed.

C.  <u>Claims under United States Constitution.</u>

Plaintiffs allege a number of constitutional claims pursuant to the United States Constitution.  Dkt. 7, at 15-16.  Furthermore, in numerous instances in their motion for summary judgment and reply brief, Plaintiffs argue that Defendants' conduct is unconstitutional, with most of these allegations unsupported by further references to a specific section, clause, or amendment.  *See* Dkt. 22, at 13, 16, 17, and 22; Dkt. 27, at 5, 10, and 11.  Defendants in turn request that each of these claims be dismissed.  Dkt. 13, at 29-37.  Because Plaintiffs' arguments often lack reference to the specific constitutional provisions, each of the constitutional claims presented in the First Amended Complaint (Dkt. 7) will be discussed.

### 1.  *Supremacy Clause*

Plaintiffs claim that because the reductions in personal care service hours fall below a level of service that is deemed sufficient as required by 42 C.F.R. § 440.230(b), the reductions cannot be performed consistent with the federal regulation.  Dkt. 7, at 15.  Plaintiffs claim that the reductions impair a federal purpose and are therefore unconstitutional under the Supremacy Clause of the United States Constitution.  *Id.*  Defendants argue that any Supremacy Clause claim is collateral to any Medicaid sufficiency claims and must be dismissed.  Dkt. 13, at 29.

Article VI, Clause 2 of the United States Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The Supremacy Clause is not the direct source of any federal right, but "secures federal rights by according them priority whenever they come in conflict with state law." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989), *quoting Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 613 (1979).  Under the preemption doctrine, state laws that

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 20

"interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are preempted. *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991), *quoting Gibbons v. Ogden*, 9 Wheat. 1, 22 U.S. 1, 9 (1824).

Where Congress has not expressly preempted or entirely displaced state regulation in a specific field, as with the Medicaid Act, "state law is preempted to the extent that it actually conflicts with federal law." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203-04, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). An actual conflict arises where compliance with both state and federal law is a "physical impossibility," or where the state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.*, quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963) and *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

While Medicaid is a system of cooperative federalism, the same analysis applies: once the state voluntarily accepts the conditions imposed by Congress, the Supremacy Clause obliges it to comply with federal requirements. *See Jackson v. Rapps*, 947 F.2d 332, 336 (8th Cir. 1991) (applying conflict preemption doctrine to state AFDC law, analogous to Medicaid's system of cooperative federalism). *See also King v. Smith*, 392 U.S. 309, 316, 326-27 (1968); *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 337 (5th Cir. 2005) ("once a state has accepted federal funds, it is bound by the strings that accompany them").

Here, Plaintiffs are unable to show the necessary prerequisite for a preemption claim, namely that a state law or regulation creates an "actual conflict" with federal law. As discussed above, there exists no evidence that shows that the 2009 reductions in personal care service hours fell below a level that is sufficient in amount, duration, and scope to reasonably achieve the purpose of personal care services. The 2009 reductions therefore create neither a "physical

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 21

1    impossibility" nor "stand as an obstacle to the accomplishment and execution of the full purposes

2    and objectives" of 42 C.F.R. § 440.230(b).  Because there are no genuine issues of material fact

3    regarding this issue, and based on the applicable law, this claim should be dismissed.

4                2.   *Contracts Clause*

5            Although not contained in their amended complaint, Plaintiffs apparently argue in their

6    motion for summary judgment that the 2009 reductions were a violation of the Contracts Clause

7    of the United States Constitution.  Dkt. 22, at 16.  Furthermore, although this specific argument

8    was apparently not rebutted by Defendants in their response (Dkt. 24), Defendants did move for

9    summary judgment on all of Plaintiffs' claims (Dkt. 13, at 3).  Therefore, the Court will consider

10   whether either party should be granted summary judgment regarding whether paragraph 19 of

11   the agreement between DSHS and provider Plaintiffs constitutes "a classic impairment of

12   contract by the legislature" pursuant to the federal Contracts Clause.  Dkt. 22, at 16.

13

14           The Contracts Clause of the United States Constitution provides "No state shall…pass

15   any…law impairing the obligation of contracts." U.S. CONST. art. I, § 10.  The Contracts Clause

16   limits the power of the States to modify their own contracts as well as to regulate those between

17   private parties. *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 17 (1977).

18

19           In conducting a Contracts Clause analysis, Courts consider the following three inquiries:

20   (1) whether the state law has operated as a substantial impairment of a contractual relationship;

21   (2) whether the state has a significant and legitimate public purpose for the law; and (3) whether

22   the adjustment of the rights and responsibilities of contracting parties is based upon reasonable

23   conditions and is of a character appropriate to the public purpose justifying the legislation's

24   adoption." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004).

25

26

The first step in the Contracts Clause analysis to determine whether the law in question operated as a substantial impairment of a contractual relationship.  An impairment of a public contract is "substantial" if it deprives a private party of an important right, thwarts the performance of an essential term, defeats the expectations of the parties, or alters a financial term.  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 890 (9th Cir. 2003).

Plaintiffs appear to claim that the 2009 reductions were a legislative impairment of the agreements between Plaintiff providers and DSHS.  Dkt. 22, at 16.  Each Plaintiff provider in this case contracted with DSHS to act as an Individual Provider according to the terms and conditions of the "Client Service Contract."  Dkt. 23-3, at 13-24.  For this specific claim, Plaintiffs argue that the 2009 reductions in personal care service hours is a legislative impairment of a contract when applied against paragraph 19 of the "DSHS General Terms & Conditions" of the Client Service Contract.  Paragraph 19 provides:

> **Health and Safety.**  Contractor shall perform any and all of its obligations under this Contract in a manner that does not compromise the health and safety of any DSHS client with whom the Contractor has contact.

Dkt. 23-3, at 16.  Plaintiffs apparently claim that the Contracts Clause of the United States Constitution prohibits Defendants from reducing the number of hours provided because paragraph 19 requires Plaintiff providers to maintain some level of constant services in the face of a reduced level of payment from the state.

Plaintiffs have not demonstrated that the 2009 reductions deprive a private party of an important right, thwart the performance of an essential term, defeat the expectations of the parties, or alter a financial term.  *S. Cal. Gas Co.*, 336 F.3d at 890.  A plain reading of paragraph 19 shows that the purpose of the provision is to prohibit providing services in a manner that would compromise the health and safety of a DSHS client.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 23

According to other paragraphs in the Client Service Contract, the number of hours a provider may provide is the number of hours a recipient is authorized to receive. For example, paragraph 9(g) of the "Special Terms & Conditions" of the Client Service Contract states that "[t]he monthly payment for all services provided to any client will not exceed the amount authorized in the Client's Service Plan." Dkt. 23-3, at 23. Additionally, paragraph 9(i) provides that "DSHS will only reimburse the Contractor for *authorized* services actually provided to clients." *Id* (emphasis added). These provisions show that the provider has bargained to perform services only in exchange for an amount of compensation that is authorized by DSHS, not an amount that is predicated on the amount of services actually provided, as Plaintiffs suggest.

Therefore, based on a plain reading of paragraph 19 of the Client Service Contract and the other provisions of the agreement, the 2009 reductions were not violative of the Contracts Clause of the United States Constitution. As there are no genuine issues of material fact and based on the applicable law, Plaintiffs' federal Contracts Clause claim should be dismissed.

### 3. *Due Process Clauses*

Plaintiffs also allege claims in their First Amended Complaint under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Dkt. 7, at 15-16. Plaintiffs' Motion for Summary contains no specific arguments regarding a violation of Due Process. Additionally, in Plaintiffs' Reply Brief to Defendants' Response to Plaintiffs' Motion for Summary Judgment (Dkt. 27), Plaintiffs state that "many of the allegations set forth in the original complaint were not supported in the summary judgment brief [of Plaintiffs]." Dkt. 27, at 10. Plaintiffs assert that "[m]ost of the claims that were not supported in the briefing had to do with the state plan allegations that we do not believe we have standing to pursue any longer." Dkt. 27, at 23. Based on the absence of any evidence or arguments regarding Due

Process claims in their Motion for Summary Judgment (Dkt. 22) or Reply Brief (Dkt. 27), it appears that Plaintiffs wish to no longer pursue their Due Process claims.

Local Rule 7(b)(2) provides, "If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."  Here, Plaintiffs have failed to oppose Defendants' motion for summary judgment on whether the 2009 reductions in personal care services hours were a violation of Plaintiffs' rights to Due Process. Plaintiffs have not met their burden to show that there are genuine issues of material fact as to their Due Process claims.  Therefore, Defendants' motion for summary judgment should be granted and Plaintiffs' Due Process claims should be dismissed.

D.  <u>Remaining State Law Claims.</u>

In their Motion for Summary Judgment, Plaintiffs state that "this case is as much about basic contract law as it is about [M]edicaid law."  Dkt. 22, at 8.  Plaintiffs argue that the reduction of hours at issue is improper in light of agreements between (1) DSHS and CMS, (2) DSHS and recipient Plaintiffs, and (3) DSHS and provider Plaintiffs.  *Id.*

As analyzed above, all claims asserted by Plaintiffs for which this Court has original jurisdiction should be dismissed in favor of Defendants.  These claims include: (1) those involving any purported regulatory requirement for Defendants to gain approval of CMS before instituting the 2009 reductions, and (2) those claims alleging that the reductions fell below that level of service deemed sufficient pursuant to 42 C.F.R. § 440.230(b).  Furthermore, any claims arising from a violation of a provision of the United States Constitution are dismissed.

What remains, then, are the claims by Plaintiffs that sound in Washington state constitutional, administrative, and contractual law that could be adjudicated by this Court in an exercise of supplemental jurisdiction.  These claims include (1) contrary to Washington

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 25

administrative regulations and contract law, whether Defendants breached an agreement between CMS and DSHS to the detriment of Plaintiffs, (2) the applicability of the consent decree entered in *Mead v. Burdham*, and (3) whether Defendants' conduct was improper in light of the terms and conditions of the agreements between DSHS and Plaintiff recipients and providers, contrary to Washington constitutional and contractual law

Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over state law claims if (1) the claims raise novel or complex issues of state law, (2) the state claims substantially predominate over the claim which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the values of economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (internal citations omitted).

All claims for which this Court has original jurisdiction should be dismissed. As such, there is no longer a federal nexus in this case. Furthermore, the Court also notes that Plaintiffs chose a state forum. Dkt. 1. No federal issues remain, and Plaintiffs' original choice of forum is entitled to some consideration.

Furthermore, this case involves important issues of state law and policy. Specifically, this case involves issues arising from the legislative appropriation of taxpayer funds for the health and welfare of its citizens. Certainly, Plaintiffs in this case – both recipients and providers – are those Washington citizens to whom a state government should afford assistance. The Court recognizes the difficult conditions under which Plaintiffs and their families must live their lives.

However, judicial intervention regarding the means by which a democratically-elected state legislature and executive allocate scarce public resources is a question best left for state courts. Thus, principles of comity suggest that the proper role of federal courts in cases such as this is to leave state law claims to the discretion of state courts.

Accordingly, the parties should be ordered to show cause why this court should not decline to exercise supplemental jurisdiction over the state law claims in this case.

Therefore, it is hereby **ORDERED** that:

(1) Defendants' Motion for Summary Judgment (Dkt. 13) is **GRANTED** in part, as follows: (1) claims regarding the unenforceability of the 2009 reductions in personal care service hours pursuant to federal regulations, (2) claims based on Medicaid sufficiency regulations, and (3) claims based on the United States Constitution are **DISMISSED**.

(2) Plaintiffs' Motion for Summary Judgment (Dkt. 22) is **DENIED** in part with regards to the claims based on federal law.

(3) Not later than October 1, 2010, the parties are directed to **SHOW CAUSE** in writing, if any they may have, why the Court should not decline to exercise supplemental jurisdiction over the pending state law claims.  This matter is noted for consideration on the Court's calendar for October 4, 2010.  The parties are notified that, if they fail to timely respond to this Order to Show Cause, or if they otherwise fail to show cause as directed herein, the Court will remand the state law claims to state court.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 17th day of September, 2010.

ROBERT J. BRYAN
United States District Judge

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 27